**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| PEC MINERALS LP | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:09-CV-166 |
| | § | |
| CHEVRON USA INC. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are the following motions: Plaintiff's Motion for Partial Summary Judgment (Doc. No 14) and Defendant's Motion for Summary Judgment (Doc. No. 16). Having considered the parties' briefing, oral argument, the undisputed facts, and the applicable law, the Court DENIES Plaintiff's Motion for Partial Summary Judgment (Doc. No. 14) and GRANTS Defendant's Motion for Summary Judgment (Doc. No. 16).

## I.    BACKGROUND

This action arises out of a disputed oil and gas lease (the Lease) that dates back to 1944. The parties dispute whether the habendum clause is modified by another provision in the Lease. For the reasons discussed below, the Court agrees with Defendant that the disputed language does not modify the habendum clause.

Louis Werner Saw Mill Company and Skelly Oil Company entered into an the Lease on March 10, 1944. The Lease covered 29,105.70 acres in Panola County, Texas, and extended for a primary term of ten (10) years. Following multiple amendments, the primary term was finally extended to March 10, 1969.

When the parties executed the final lease extension, Skelly Oil Company agreed to release

any units not producing when the primary term expired.  The parties also listed eighty (80) units in which Skelly Oil Company did not release its interest (the Retained Units).

The dispute now before the Court relates to the status of six of the Retained Units.  Five of these six units were not producing as of October 7, 2008 (the Disputed Units).[1]  Plaintiff — successor in interest to the original lessor, Louis Werner Saw Mill Company — attempted to lease the Disputed Units to a third party, XTO Energy, Inc.  Plaintiff claimed that the Disputed Units were no longer producing and thus no longer subject to the Lease.  On October 7, 2008, Plaintiff asked Defendant — successor in interest to the original lessee, Skelly Oil Company — to execute releases for the Disputed Units.  Defendant refused.

Plaintiff filed this law suit to, *inter alia*, establish clear title as to 2,397.17 acres contained in the Disputed Units.  In their cross-motions for summary judgment, the parties ask the Court to determine, as a matter of law, whether the Lease continued in effect as to the Disputed Units.

## II.    STANDARD

The Court should grant a motion for summary judgment if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is

---

[1]Originally, Plaintiff claimed that all six units were not producing. Plaintiff now concedes that the Louis Werner "A" Unit was producing as of October 7, 2008, but contends that a fact issue exists regarding whether the Unit was producing enough oil and gas to extend the Lease.

such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961.

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response. *Little*, 37 F.3d at 1075. If the movant meets the burden, however, Rule 56 requires the opposing party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

### III.    ANALYSIS

The parties agree that the terms of the Lease are unambiguous. Accordingly, the Court interprets the Lease as a matter of law. Specifically, the issue before the Court is whether the Lease was in effect as to the Disputed Units when Plaintiff asked Defendant to execute releases.

In a lease dispute, the Court construes an unambiguous lease as a matter of law. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2003). In construing a lease, the Court should determine the intent of the parties as set forth in the terms of their agreement. *Id.* The lease should be read as a whole, and the Court considers the plain, grammatical meaning of the terms used, unless doing so would clearly defeat the intentions of the parties. *Id.* The Court presumes that the parties intend every clause in the lease to have some effect. *Id.*

It is undisputed that when the primary term expired, the Lease continued as to any of the Retained Units that continued to produce oil or gas. But the Disputed Units were no longer producing. Plaintiff argues that the Lease does not continue as to non-producing units. But Defendant claims that the Lease continues as to all of the Retained Units — including the Disputed Units — if at least one unit continues to produce.

For the reasons discussed below, the Court finds that as of October 7, 2008, the Lease remained in effect as to all of the Retained Units.

The habendum clause in an oil and gas lease establishes the duration of the lease. 8 Patrick H. Martin and Bruce M. Kramer, Williams & Meyers, Oil and Gas Law, H Terms (LexisNexis Matthew Bender 2009). The habendum clause in the parties' Lease states that "Subject to the other provisions herein contained, this lease shall be for a term of ten years from this date (called "Primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder." Lease at ¶ 2.

Under this type of habendum clause, production of mineral or gas anywhere on the property extends the lease as to all the leased property. *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 149 (Tex. 2004). Other provisions within a lease may modify and limit the habendum clause

only if the language used is "so clear, precise, and unequivocal that [it] can reasonably [be given] no other meaning." *Anadarko,* 94 S.W.3d at 554.

Plaintiff claims that Paragraph 5(f) of the Lease is sufficiently clear, precise, and unequivocal to modify the habendum clause. Emphasizing the last two sentences of Paragraph 5(f), Plaintiff argues that the duration of the Lease is determined on a unit-by-unit basis. Defendant counters that Paragraph 5(f) relates to the payment of delay rentals and thus does not modify the habendum clause.

Paragraph 5(f) states the following:

> But anything in this lease to the contrary notwithstanding, it is agreed that as additional consideration for the payment by Lessee of the said cash payment of $50,000.00 and its agreement to pay the said fixed rentals as and when due under the above provisions hereof, Lessee shall have the right, in event it shall, prior to March 10th, 1948, drill a well on said leased premises or on acreage pooled therewith productive of oil, gas or other minerals in paying quantities, to continue this lease in force as to each of the other undeveloped drilling or spacing units "all to be selected by Lessee as soon as practicable after the completion of such well" for as long as such paying production shall continue and without being obligated to conduct drilling operations on such undeveloped units, by paying or tendering to Lessor, or to its credit in said depository bank, commencing on or before March 10th, 1948, and annually thereafter until the end of the said primary term of this lease, a rental of one dollar per acre for each acre contained in each such undeveloped drilling or spacing unit or fraction thereof. **But the commencement by Lessee of drilling operations on any such undeveloped drilling or spacing unit shall relieve Lessee from the payment of such rental thereon, and if paying production should result from such operations this lease shall continue in force as to the drilling or spacing unit on which such production is had for as long as such production continues. It is agreed that the provisions of this sub-paragraph (f) hereof shall be separable and shall be considered and applied as a separate agreement as respects each such undeveloped drilling or spacing unit.** (Emphasis added.)

Both parties agree that the first sentence in Paragraph 5(f) addresses the payment of delay rentals during the primary term. But Plaintiff argues that the second and third sentences amend the habendum clause, rather than affect the delay rental provision.

Plaintiff points to language in the second sentence that the Lease continues as to each unit for as long as *that* unit is producing. Plaintiff argues that this divides the leasehold into tracts, and the tracts should be treated separately for *all purposes*. But Plaintiff's analysis overlooks the first half of the sentence, which states that if the lessee begins drilling operations on an undeveloped unit, delay rentals are unnecessary as to that unit. In other words, the second sentence simply clarifies the circumstances under which delay rentals are no longer necessary during the primary term. The second half of the sentence, which Plaintiff relies on, explains that delay rentals also are unnecessary for any producing units. The Fifth Circuit explained in *Glasscock v. Sinclair Prarie Oil Co.* that a delay rental provision that treats tracts separately is intended to avoid a forfeiture by the lessor of *all* the delay rentals upon production of a single well and does not apply to the period beyond the primary term. *Glasscock v. Sinclair Prairie Oil Co.*, 185 F.2d 910, 912 (5th Cir. 1950). As in *Glasscock*, nothing in the second sentence of Paragraph 5(f) suggests that it applies to other provisions in the Lease.

Plaintiff also relies on the third and final sentence of Paragraph 5(f) to support its position. The last sentence states that the provisions of Paragraph 5(f) shall be treated as separate agreements as to each unit. This does not clearly and unequivocally amend the habendum clause. Language that treats different provisions in an oil and gas lease as separate agreements does not necessarily amend the habendum clause. *Mathews v. Sun Oil Co.*, 425 S.W.2d 330, 333 (Tex. 1968)("Because a lease will be considered as two leases for certain purposes, it does not follow that a single lease will be considered as two leases for all purposes.").

Furthermore, the last sentence of Paragraph 5(f) states that it only applies to the provisions of that paragraph. As discussed above, Paragraph 5(f) relates to delay rentals. Thus, the last

sentence has no impact on Lease provisions that are unrelated to delay rental payments (such as the habendum clause). *See, Glasscock,* 185 F.2d at 912 (holding that a delay rental provision did not amend the habendum clause).

The Court must interpret the Lease in a manner that gives meaning to all of the Lease provisions. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The Court's interpretation of the Lease achieves this goal and gives meaning to *all* of the language included in Paragraph 5(f) as well as to the habendum clause in Paragraph 2. Accordingly, production anywhere on the leased property extends the lease as to all the Retained Units.

Defendant submitted evidence that one of the units — the Louis Werner "A" Unit (the Unit) — was producing gas as of October 7, 2008. Stone Aff. Ex. A to Def.'s Resp. ¶ 4. Plaintiff contends that a factual issues exists as to whether the Unit produced enough gas to maintain the Lease. Plaintiff has the burden to support its contention that a fact issue exists by affidavit, deposition, interrogatory answers, admissions on file, or other admissible evidence. *Anderson*, 477 U.S. at 250; *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). Plaintiff's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. Plaintiff has not pointed to any evidence that demonstrates a genuine factual dispute regarding whether the volume of production from the Unit was enough to maintain the lease. Accordingly, the undisputed evidence demonstrates that the Louis Werner "A" Unit was producing gas as of October 7, 2008, and thus maintained the Lease as to all the Retained Units, including the Disputed Units.

IV.    CONCLUSION

For the reasons stated above, Paragraph 5(f) of the Lease does not amend the habendum clause.   Thus, the Lease remained in effect as to the Disputed Units on October 7, 2008. Accordingly, the Court hereby DENIES Plaintiff's Motion for Partial Summary Judgment (Doc. No. 14) and GRANTS Defendant's Motion for Summary Judgment (Doc. No. 16).  Plaintiff's claims are hereby dismissed with prejudice.


**It is SO ORDERED.**

**SIGNED this 27th day of August, 2010.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE